**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| ROGER L. SCHLAIFER,<br><br>Plaintiff,<br><br>v.<br><br>ORIGINAL APPALACHIAN ARTWORKS, INC. and XAVIER E. ROBERTS,<br><br>Defendants. | Civil Action File No.:<br><br>________________<br><br>TRIAL BY JURY DEMANDED |

## COMPLAINT

COMES NOW Plaintiff Roger L. Schlaifer ("Schlaifer"), who files this Complaint against Defendants Original Appalachian Artworks, Inc. ("OAA") and Xavier Roberts ("Roberts") (hereinafter collectively as "Defendants") respectfully stating as follows:

## INTRODUCTION

1.

This is a civil action seeking actual and statutory damages for copyright infringement arising under the copyright laws of the United States, 17 U.S.C. § 101 *et seq.*, as amended (the "Copyright Act"), as well as declaratory judgment as to authorship and copyright ownership.

2.

Plaintiff Schlaifer is the originating creator of the Cabbage Patch Kids ("CPK") property. He named the brand, authored its complete mythology, developed its characters, and created the visual brand identity that transformed OAA's obscure handmade "Little People" dolls into a $4.5 billion global phenomenon. Before Schlaifer, these were OAA's "Little People" — a name owned by Fisher-Price — crude handmade cloth dolls Roberts marketed as "babies" to be "adopted," with appeal largely confined to young girls and folk-art collectors. Schlaifer renamed them the Cabbage Patch Kids; authored the brand's unique typographical wordmark and Cabbage-Bud logo, its packaging and complete Standards Guide, and its entire visual identity; and recast the dolls themselves from homely folk-art humanoids with misshapen bodies into the irresistibly adorable babies, infants, and toddlers that ignited a mass-market phenomenon.

3.

Schlaifer holds U.S. Copyright Registration No. VA 2-353-205 for the Cabbage Patch Kids Large Doll (the "Large Doll Copyright"), which the U.S. Copyright Office registered on July 3, 2023, naming Schlaifer as sole author and copyright claimant.

4.

Defendants have, without Plaintiff's permission, license, authorization, or consent, commercially exploited Schlaifer's copyrighted work. OAA continues to

operate the CPK brand through its website cabbagepatchkids.com, Babyland General Hospital in Cleveland, Georgia (a 70,000-square-foot facility on 650 acres that OAA claims draws 250,000 visitors annually), and an active licensing program with major toy companies including Hasbro, Mattel, JAKKS Pacific, Wicked Cool Toys, and Jazwares.

5.

Without Plaintiff's permission, license, authority, or consent, Defendants knowingly and illegally used Schlaifer's copyrighted work — the Cabbage Patch Kids Large Doll — to operate and commercially exploit the CPK franchise, including BunnyBees, Colonel Casey (the Stork), Xavier Roberts as a young boy/protagonist, and Schlaifer's mythology regarding how cabbage blossoms pollinated by the BunnyBees' magic crystals turned into Cabbage Patch Kids.

6.

Defendants' commercial exploitation of the CPK property and the content protected by Schlaifer's Large Doll Copyright are strikingly and substantially similar, as Defendants have built their entire CPK enterprise upon Schlaifer's original creative work.

7.

Plaintiff Schlaifer was the founder and CEO of Atlanta-based founded Schlaifer Nance & Company, which later incorporated as Schlaifer Nance &

Company, Inc., a Georgia corporation that has since been administratively dissolved (collectively, "SN&C").

8.

Beginning in March 1982 and continuing until the January 4, 1988 Settlement Agreement, (the "1988 Settlement"), SN&C served as OAA's exclusive worldwide licensing / licensor agent/licensor for the CPK property pursuant to the March 1, 1982 licensing agreement (the "March 1, 1982 Agreement"). Under that Agreement, OAA granted SN&C "the exclusive right to license persons to use the designs, trademarks and tradenames of PRODUCER worldwide."

9.

While OAA listed "Cabbage Patch" and "Cabbage Patch Kids" among the six "DESIGNS" it purported to own, OAA in fact owned neither the copyrights nor the trademarks in them — both were Schlaifer's creations. The only "DESIGN" in which OAA held a copyright was the Little People dolls; and the "Little People" trademark for toys was owned by Fisher-Price, which OAA did not disclose.

10.

SN&C's efforts reinvented OAA's Little People — transforming_collectible, one-of-a-kind rag dolls from a failing regional handcraft operation into the Cabbage Patch Kids, a $4.5 billion global phenomenon. On August 8, 1982, Roger Schlaifer, dba SN&C, in his capacity as the exclusive licensing agent/licensor for OAA, executed a licensing agreement with Coleco Industries, Inc., granting Coleco the

exclusive right to manufacture and sell CPK toys and games — the deal that made CPK a mass-market worldwide sensation. Throughout this period, OAA retained sole responsibility for "Registration of copyrights and trademarks" and "enforcement of the same" under the March 1, 1982 Agreement.

11.

Despite this profitable partnership built on Schlaifer's creative vision, Defendants deceived Schlaifer by exploiting his copyrighted work in the CPK franchise without ever securing valid authorization. The foundation of that deception lies in a fatal defect in the chain of title: Schlaifer's individual authorship rights were never validly transferred to SN&C, the corporate entity that signed the January 4, 1988 Settlement Agreement with OAA. Because the Copyright Act (17 U.S.C. § 204(a)) requires a specific written instrument to transfer authorship-based rights from a natural person to a corporation, and no such instrument exists, the 1988 Settlement releasing "all of [SN&C's] right, title and interest in and to the Contracts and the CPK property" never extinguished Schlaifer's individual author rights.

12.

Moreover, although "the CPK property" was the subject of two years of intense litigation, the term itself was never defined in the 1988 Settlement.

13.

OAA knew of this gap in the chain of title and deliberately exploited it. OAA conducted the 1988 Settlement against SN&C, the corporation, knowing that the

Copyright Act requires a specific written instrument to move authorship-based rights from a natural-person author to a corporate entity; that no such instrument existed; and that OAA had the duty and ability to verify ownership but deliberately failed to do so – so as to deceive Schlaifer as to his rights in the Cabbage Patch Kids – in order to reap the benefit of releasing rights its counterparty did not own. Defendants have made hundreds of millions of dollars in profits from their knowing infringement of Schlaifer's copyrighted work.

14.

In the more than three decades following the 1988 Settlement, OAA continued to exploit the CPK brand built on Schlaifer's creative work. OAA filed approximately seventy derivative copyright registrations, licensed the CPK property to major toy companies including Hasbro, Mattel, JAKKS Pacific, Wicked Cool Toys, and Jazwares — each license containing false ownership warranties — and operated Babyland General Hospital as the experiential anchor of the brand.

15.

Throughout this period, OAA continued to falsely attribute creation of the CPK property to Xavier Roberts, a deception so pervasive that even the foremost historian of the American toy industry credited Roberts as creator in his authoritative work.

16.

In January 2022, Schlaifer submitted seven copyright registration applications to the U.S. Copyright Office to clarify his ownership of the CPK works. The Office's examination process required extensive correspondence to resolve complex authorship questions — including Coleco's role, the work-for-hire status of sculptors, and the licensee/sublicensee chain. On June 1, 2023, Schlaifer was still working through these issues with Copyright Office examiner R. Barker.

17.

The Office adjudicated the matter on July 3, 2023, issuing Registration No. VA 2-353-205 for the Cabbage Patch Kids Large Doll and naming Schlaifer as sole author and copyright claimant, with Coleco's sculpting work expressly treated as work made for hire performed under Schlaifer's authority.

18.

As a result of Defendants' infringement of Schlaifer's copyrighted work — including the dolls, BunnyBees, mythology, and Colonel Casey the stork — Plaintiff seeks damages, including, *inter alia*, an accounting of profits by Defendants, damages and lost profits of Plaintiff, costs, and attorneys' fees; or, at Plaintiff's election, statutory damages. Plaintiff also seeks equitable relief, including preliminary and permanent injunctive relief, and impoundment and destruction of the infringing articles, to prevent further violations of Plaintiff's rights under the Copyright Act of 1976, as amended, 17 U.S.C. § 101 *et seq*. Furthermore, because

Defendants willfully and deliberately infringed upon Schlaifer's copyrighted work, Plaintiff seeks an award of attorneys' fees and costs pursuant to 17 U.S.C. § 505.

## PARTIES AND JURISDICTION

19.

Plaintiff Roger L. Schlaifer is a resident of Amelia Island, Florida.

20.

Upon information and belief, Defendant OAA is a Georgia corporation with its principal place of business at 1721 Hwy 75 South, Cleveland, Georgia 30528. OAA is the entity that claims ownership of the CPK trademark and copyright rights, operates Babyland General Hospital, and licenses the CPK property to third parties. Service may be made upon Defendant OAA's registered agent.

21.

Upon information and belief, Defendant Xavier Roberts is a Georgia resident who resides at or near 75 14th St NE, Suite 5100, Atlanta, Georgia 30309. Roberts is the principal and founder of OAA and has at all relevant times exercised direction and control over OAA's business operations, including its copyright registration activities, licensing program, and commercial exploitation of the CPK property.

22.

Upon information and belief, Roberts personally directed and supervised OAA's infringing activities and had both the right and ability to control OAA's use

of Schlaifer's copyrighted work, as well as a direct financial interest in that exploitation.

## **JURISDICTION AND VENUE**

23.

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a). Federal question jurisdiction exists under 28 U.S.C. § 1331 because this action arises under the Copyright Act of 1976, 17 U.S.C. § 101 *et seq*. Additionally, 28 U.S.C. § 1338(a) confers original and exclusive jurisdiction upon this Court for civil actions arising under any Act of Congress relating to copyrights.

24.

This Court has personal jurisdiction over each of the Defendants because Defendants have conducted business in the State of Georgia and purposefully availed themselves of the benefits and laws of the State of Georgia.

25.

Upon information and belief, examples of Defendants conducting business in the State of Georgia and purposefully availing themselves of the benefits and laws of the State of Georgia include operating Babyland General Hospital in Cleveland, Georgia; maintaining OAA's principal place of business in Georgia; producing, marketing, licensing, and selling CPK products throughout the State of Georgia; and actively soliciting licensees from Georgia.

26.

Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c), and 1400(a). Under 28 U.S.C. § 1391(b)(1), venue lies in a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located. OAA is a Georgia corporation with its principal place of business in Cleveland, Georgia, which is located within this District, and Xavier Roberts is a Georgia resident who resides at or near Cleveland, Georgia. Under 28 U.S.C. § 1400(a), venue for copyright infringement actions lies in the district in which the defendant or his agent resides or may be found. Defendants reside and may be found in this District.

## FACTS

### A. Schlaifer's Authorship, The CPK Licensing Framework, and Copyright Registration.

27.

Schlaifer is the founder of Schlaifer Nance & Company and the originating creator of the Cabbage Patch Kids brand. In 1982, he was engaged by OAA to market and license the CPK property, and it was through his creative contributions that the brand became a global phenomenon generating approximately $4.5 billion in retail sales during his tenure as exclusive worldwide licensor.

28.

Roberts's pre-existing product was a regional line of crude, one-of-a-kind handmade cloth dolls, which he marketed as collectible investments — "babies" to be "adopted" — though they were widely regarded as homely folk-art curiosities, with a market largely limited to young girls and folk-art collectors, and which every major doll manufacturer had rejected as too unattractive to sell.

29.

Schlaifer transformed that narrow craft item into a global brand. He gave the property its name — Cabbage Patch Kids — and created its logo, packaging, graphic Standards, and entire visual identity, recasting the dolls themselves from homely folk art into the smooth-featured, toddler-proportioned, irresistibly adorable characters that sold on retail shelves around the world.

30.

Schlaifer authored the mythology that gave the brand its meaning: from a single line on a hangtag referencing the old wives' tale that babies are born in a cabbage patch, he built an original, fanciful world — one in which the BunnyBees, bee-like creatures with rabbit ears they used to fly, spread magic crystals to pollinate the blossoms of a hidden, neglected cabbage patch, from which the Cabbage Patch Kids were born. That design and mythology turned Roberts's Martha Nelson Thomas–inspired "babies" into the most beloved dolls in the world, expanding the

property's reach from a narrow regional following into a broad, cross-demographic, worldwide audience.

31.

The result of Schlaifer's work was a consumer phenomenon without precedent in the history of the toy industry: during the 1983 holiday season, demand grew so intense that shoppers fought one another in store aisles to obtain a single doll — a frenzy that became the catalyst for what would total approximately $4.5 billion (in 1980s dollars) in retail sales of Cabbage Patch Kids merchandise, spanning dolls, children's apparel, lunch boxes, children's bedding, and the first licensed baby diapers and low-sugar cereal. Nothing in Roberts's original dolls supplied that name, that design, that narrative, or that identity; each was Schlaifer's original authorship.

32.

The operative original licensing instrument is the March 1, 1982 Agreement between OAA (as "PRODUCER") and "SCHLAIFER NANCE & COMPANY, a sole proprietorship" (as "LICENSOR"). Under that Agreement, OAA granted the licensor "the exclusive right to license persons to use the designs, trademarks and tradenames of PRODUCER worldwide." *See* March 1, 1982 Agreement, attached hereto as **Exhibit "A"**.

33.

The March 30, 1982 amendment draft to the March 1, 1982 Agreement, Paragraph 9(a), specifically addresses "Original Works Created by Schlaifer Nance and Company," providing that "Original works of authorship created by Schlaifer Nance and Company ... shall belong to Schlaifer Nance and Company, and Producer shall make no claim to the same."

34.

On August 8, 1982, Coleco Industries, Inc. executed a licensing agreement with SN&C (as exclusive licensing agent for OAA) granting Coleco the exclusive right to manufacture and sell CPK toys and games. This agreement made CPK a mass-market phenomenon. *See* Coleco License Agreement, attached hereto as **Exhibit "B"**.

**B. <u>OAA's Fraudulent 1982 Copyright Registration</u>.**

35.

On October 30, 1982 — after the Coleco agreement was in place but before SN&C's incorporation was formalized — OAA filed for copyright protection of the plastic-headed CPK dolls that Coleco was manufacturing. In that registration, upon which OAA's entire chain of title now rests, OAA represented to the Copyright Office that the Coleco plastic dolls were "exact copies" of OAA's 1979 one-of-a-kind handmade cloth "Little People" dolls. This representation was false.

36.

Under 17 U.S.C. § 411(b), a copyright registration is invalid if the application contained inaccurate information that the applicant knew was inaccurate at the time of registration. In *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 595 U.S. 178 (2022), the Supreme Court confirmed this "knowing inaccuracy" standard, holding that a registration is void when the applicant subjectively knew the information submitted to the Copyright Office was false. The "exact copies" representation in OAA's 1982 registration satisfies this standard and fails on multiple independent grounds.

37.

First, the claim is a mathematical impossibility. One-of-a-kind items, by definition, cannot have "exact copies." Each of OAA's handmade cloth "Little People" dolls was a unique creation — no two were alike. Nothing can be an "exact copy" of a one-of-a-kind original, and two one-of-a-kind dolls cannot be "exact copies" of each other. OAA's own characterization of the Little People as one-of-a-kind thus forecloses the very "exact copies" claim on which its 1982 registration depends.

38.

Second, the claim is a visual impossibility. The handmade cloth "Little People" dolls and the mass-produced Coleco plastic CPK dolls are manifestly different creative works. OAA never produced — then or since — even a single doll

that was in fact an "exact copy" of a 1979 Little People doll. Had it done so, modern injection molding would have faithfully carried over the Little People's textured cloth surface, deep creases, and coarse, largely earless features. The Little People are cloth, closed-mouthed, deep-creased, mostly earless, and oddly proportioned. The Coleco CPK dolls are smooth-headed, oval-faced, dimpled, and normally proportioned — an entirely different creative work developed at Schlaifer's direction. Modern injection molding technology could have reproduced cloth texture had OAA desired; the Coleco dolls deliberately did not replicate the Little People aesthetic because they were a new creative work.

39.

Third, the "exact copies" representation was false — yet it was exceedingly unlikely ever to be discovered, because copyright registrations are treated as *prima facie* evidence of their truth, and without the dolls to compare, even highly sophisticated counsel would have no reason to suspect deception.

40.

Fourth, OAA's own commercial behavior rebuts the "exact copies" claim. At no point during the licensing relationship did OAA propose that SN&C license the "Little People" line — OAA commercialized only the property Schlaifer had authored. OAA's internal sales materials forbade the word "doll," a prohibition that served two functions: defending the art-object pricing model and avoiding Fisher-

Price's registered trademark in "Little People" for toys. OAA was structurally blocked from entering the doll category under its existing name; Schlaifer created "Cabbage Patch Kids," which solved every constraint OAA faced.

41.

OAA's roughly seventy subsequent copyright registrations derive from this fraudulent 1982 filing. The foundation of OAA's entire copyright portfolio is void.

42.

The fraudulent registration was buried under an avalanche of apparent legitimacy that made it inherently undiscoverable. Xavier Roberts's name appeared on over one hundred million dolls, birth certificates, and adoption papers. Even sophisticated intellectual property attorneys reviewed the CPK chain of title without detecting the fraud. The foremost historian of the American toy industry, Timothy Walsh, credited Roberts as creator in his authoritative work, unaware that Schlaifer was the actual originator of the CPK brand identity.

43.

The fraud became visible only when Schlaifer obtained photographs of the dolls Xavier Roberts submitted to the Copyright Office in 1979 — physical evidence outside the four corners of the registration. That evidence, combined with the Copyright Office's subsequent confirmation of Schlaifer's ownership in 2023, exposed not only the doll fraud but a pattern extending across more than one hundred copyrights registered in OAA's name.

44.

OAA has used the fraudulent registration as the foundation for enforcement actions against third parties, including a seven-figure settlement in the Topps *Garbage Pail Kids* litigation, from which Coleco and SN&C were excluded despite their prior interests. OAA has also asserted false ownership claims in U.S. Customs enforcement filings for gray goods cases, keeping all proceeds. Each assertion of rights based on the fraudulent registration constitutes a continuing act of fraud.

**C. Schlaifer's Authorship Rights Were Never Validly Transferred.**

45.

Notwithstanding the fraudulent 1982 registration, the parties continued to operate under the March 1, 1982 Agreement. On November 3, 1982, an Addendum to that Agreement identified SN&C, Inc. as the "successor in interest to Schlaifer Nance & Co., a sole proprietorship."

46.

At the time the March 1, 1982 Agreement was executed, SN&C was not a separate legal entity — it was a sole proprietorship, meaning Schlaifer and SN&C were legally indistinguishable. Any works Schlaifer authored during this period remained his individual property, operating under a trade name. There was no separate corporate entity to which a transfer under 17 U.S.C. § 204(a) could have been made.

47.

When SN&C was subsequently incorporated as a Georgia corporation, the November 3, 1982 Addendum identified it as "the successor in interest to Schlaifer Nance & Co., a sole proprietorship." But corporate succession to a sole proprietorship's contractual rights does not automatically transfer the proprietor's individual copyrights. Under 17 U.S.C. § 204(a), a transfer of copyright ownership is not valid unless memorialized in a written instrument signed by the owner of the rights conveyed. At no point did Schlaifer execute such an instrument transferring his authorship rights to the newly formed corporation — and no such assignment appears in the record.

48.

The Addendum refers to SN&C, Inc. as a "successor in interest" to the sole proprietorship, then recites that "Producer and Licensor" "previously entered into the Agreement pursuant to the terms of which Licensor became the exclusive licensing agent for Producer." Thus, the "successor in interest" language relates only to the contractual licensing rights under the original OAA Agreement — not to a transfer of Schlaifer's underlying authorship rights in original works. *See Saxon v. Blann*, 968 F.2d 676, 680 (8th Cir. 1992) (holding that conveyance of "ownership rights" to a work is insufficient to convey the copyright; parties must specifically state in writing that they intend to transfer copyright rights).

49.

Accordingly, Schlaifer's individual authorship rights — as the creator of the Cabbage Patch Kids mythology, characters, and visual brand identity — are distinct from the contractual licensor rights held by SN&C, and were never validly transferred to SN&C, Inc. Those rights remained Schlaifer's personal property.

50.

While operating under these agreements, Schlaifer continued to create original works for the CPK franchise. Among these was the Cabbage Patch Kids Large Doll — a re-sculpt of the original CPK doll completed in 1983 and first published on June 10, 1983. The Large Doll became the iconic CPK doll design that defined the brand.

51.

By 1983, the Cabbage Patch Kids had become a nationwide sensation, sparking unprecedented consumer demand. During Schlaifer's tenure as exclusive worldwide Licensor, the first tenure as exclusive worldwide licensor, the CPK franchise generated approximately $4.5 billion in retail sales.

52.

On October 29, 1985, OAA filed a declaratory judgment action against SN&C in the United States District Court for the Northern District of Georgia, Atlanta Division (Civil Action No. C85-4336A). OAA sought a declaratory judgment as to certain issues respecting the contracts entered into by and between OAA and SN&C

on or about March 1, 1982 and by and among OAA, SN&C, and Coleco on or about August 8, 1982, and the amendments thereto.

53.

On January 4, 1988, OAA, Coleco Industries, Inc., and Schlaifer Nance & Company, Inc. executed a Settlement Agreement (the "1988 Settlement"). Under the 1988 Settlement, SN&C received a lump sum payment plus accrued royalties in exchange for releasing "all of its right, title and interest in and to the Contracts and the CPK property." *See* January 4, 1988 Settlement, attached hereto as **Exhibit "C"**.

54.

Critically, Schlaifer signed the 1988 Settlement in his capacity as President of SN&C — not in his individual capacity. The 1988 Settlement, by its terms, runs to and from SN&C the corporation — not Schlaifer the natural-person author.

55.

Following the 1988 Settlement, OAA expanded its commercial exploitation of the CPK brand over the next three decades. OAA secured approximately seventy additional copyright registrations derived from Schlaifer's original work and entered into licensing arrangements with major toy manufacturers — Hasbro, Mattel, JAKKS Pacific, Wicked Cool Toys, and Jazwares — each agreement warranting OAA's ownership of intellectual property rights it did not possess.

56.

From the time Coleco introduced CPK dolls through recent documentaries — including Billion Dollar Babies: The True Story of Cabbage Patch Kids and the History Channel's Cabbage Patch Clash — OAA publicly represented that Xavier Roberts was the creator of the Cabbage Patch Kids, even though, as part of his settlement with Martha Nelson Thomas (whose cloth "adoption" dolls Roberts had copied and originally claimed as his own invention), he credited her with inspiring the look of his dolls.

### D. The Copyright Office Confirmed Schlaifer's Authorship.

57.

Seeking to establish the scope of his ownership rights, Schlaifer filed seven copyright registration applications with the U.S. Copyright Office in January 2022. The examination process proved extensive, requiring correspondence over more than a year to address complex questions of authorship — the nature of Coleco's involvement, the work-for-hire status of individual sculptors such as Judy Albert, and the chain of rights through the licensing structure.

58.

As late as June 1, 2023, Schlaifer remained in active dialogue with Copyright Office examiner R. Barker working through these issues. *See* Correspondence with Copyright Office, attached hereto as **Exhibit "D"**.

59.

Schlaifer registered the Cabbage Patch Kids Large Doll with the United States Copyright Office, which issued Registration No. VA 2-353-205 with a Registration Decision Date of July 3, 2023.[1] The Certificate of Registration, signed by Shira Perlmutter, U.S. Register of Copyrights, names Roger Lawrence Schlaifer, dba Schlaifer, Nance & Co. as the sole author and copyright claimant, with Coleco's sculpting work expressly treated as work made for hire performed under Schlaifer's authority. *See* Certificate of Registration, attached hereto as **Exhibit "E"**.

### E. OAA Knew of Schlaifer's Authorship Rights and Deliberately Exploited the Gap.

60.

OAA conducted the 1988 Settlement against SN&C, the corporation, knowing that the Copyright Act requires a specific written instrument to move authorship-based rights from a natural-person author to a corporate entity; that no such instrument existed; and that SN&C's counsel asserted only contractual licensor-based copyright claims, unaware of Schlaifer's distinct authorship-based rights.

[1] Schlaifer also holds five additional U.S. copyright registrations for original works created during this period: TX 9-076-636 (Legend of the Cabbage Patch Kids); VA 2-344-553 (Cabbage Patch Kids Standards Manual); VA 2-334-900 (CPK Packaging); VA 2-346-282 (Colonel Casey — the Cabbage Patch Stork); and VA 1-497-676 (BunnyBee).

61.

Roberts personally directed the false attribution of Schlaifer's creative work to himself. The BunnyBees — magical creatures Schlaifer created as part of the CPK mythology — were marketed by OAA in its official publication, the Collectors Dispatch, as "An Xavier Roberts Original." On the Gold-certified Cabbage Patch Kids album, built entirely on Schlaifer's Cabbage Patch Kids name, characters, and story, OAA falsely credited Roberts as the creator of the characters and claimed the copyright, securing music-publishing rights for itself. Roberts has repeatedly represented that he personally signed up Coleco and that the CPK brand was his original creation, when in fact Schlaifer created the brand identity and SN&C executed the Coleco licensing agreement without any involvement from anyone at OAA.

62.

OAA had the duty and ability to verify ownership but deliberately failed to do so in order to reap the benefit of releasing rights its counterparty did not own.

63.

OAA never verified, and never sought to verify, that SN&C, Inc. held Schlaifer's individual author rights in the underlying works. OAA never asked for the written, specific transfer instrument the Copyright Act requires to move authorship-based rights from a natural-person author to a corporate entity. That

instrument did not exist — because the rights had never been transferred to SN&C with the specificity the statute demands.

64.

The U.S. Copyright Office registered the Cabbage Patch Kids Large Doll on July 3, 2023, naming Schlaifer as sole author and copyright claimant. OAA has not challenged Schlaifer's copyright registration in the two years since notice was served.

65.

OAA continues to operate the CPK brand through its website cabbagepatchkids.com, exploiting the CPK doll design Schlaifer created, operating Babyland General Hospital as the experiential anchor of the brand, and actively soliciting new licensees.

66.

OAA maintains licensing agreements with major toy companies including Hasbro, Mattel, JAKKS Pacific, Wicked Cool Toys, and Jazwares, each license containing false ownership warranties regarding the CPK intellectual property, including the Large Doll design.

67.

Despite formal notice being served on OAA in May 2023 regarding Schlaifer's copyright claims, OAA has continued its commercial exploitation of the CPK property without interruption.

**F. Defendants Knowingly and Willfully Infringed Schlaifer's Copyrighted Work.**

68.

Defendants' unauthorized use of Schlaifer's copyrighted work is willful and deliberate. Defendants have had direct knowledge of Schlaifer's authorship and copyright claims since at least May 2023, when formal notice was served, yet have continued their infringing activities without interruption.

69.

Every sale on cabbagepatchkids.com, every conversion at Babyland General Hospital, and every licensee solicitation is a discrete act of infringement — fully within the statute of limitations on its own terms regardless of historical analysis.

70.

The Cabbage Patch Kids Large Doll protected by Schlaifer's copyright registration is prominently featured throughout OAA's commercial operations, including its website, Babyland General Hospital, and licensed products.

71.

Defendants had direct access to Schlaifer's copyrighted work through the March 1, 1982 Agreement, the August 8, 1982 Coleco Agreement, and years of commercial collaboration.

72.

The infringing CPK products and materials bear striking and substantial similarity to Schlaifer's copyrighted work, as the entire CPK doll franchise as currently operated by OAA is built upon the Large Doll design Schlaifer created.

73.

On May 26, 2023, attorney Ryan Isenberg transmitted formal notice to OAA challenging OAA's alleged copyright claims. *See* Isenberg Notice Letter, attached hereto as **Exhibit "F"**. Kilpatrick Townsend & Stockton LLP, through James Trigg, replied on June 8, 2023 on OAA's behalf. *See* Trigg Response Letter, attached hereto as **Exhibit "G"**. Notably, OAA's response did not contest Schlaifer's copyright position.

74.

In the more than two years since receiving notice, OAA has declined to challenge any of Schlaifer's six federal copyright registrations, yet has continued its sales, licensing activities, and solicitation of new licensees unabated.

75.

Despite receiving formal notice of Schlaifer's copyright claims, Defendants have continued their infringing activities without interruption, including operating Babyland General Hospital, selling products through cabbagepatchkids.com, and soliciting new licensees.

76.

Defendants, without Plaintiff's permission, license, authorization, or consent, have used and continue to use the Cabbage Patch Kids Large Doll design to operate and commercially exploit the CPK franchise.

77.

Defendants, without authorization from Plaintiff, have copied, sold, distributed, advertised, and commercially exploited Schlaifer's copyrighted work and continue to do so.

78.

The CPK products exploited by Defendants bear striking and substantial similarity to Schlaifer's copyrighted work because they are directly derived from the Large Doll design and graphics depicted in Schlaifer's CPK Standards Manual.

79.

Defendants have operated the CPK franchise, without Plaintiff's permission, license, authorization or consent, based upon Schlaifer's copyrighted work.

80.

Defendants' commercial exploitation of the CPK property therefore infringes upon Plaintiff's copyrighted work.

81.

On information and belief, Defendants continue to operate Babyland General Hospital, maintain cabbagepatchkids.com, and actively solicit new licensees for the CPK property, all in ongoing infringement of Schlaifer's copyrighted work.

**G. <u>Timeliness Under the Discovery Rule</u>.**

82.

Plaintiff's claims are timely under the discovery rule as adopted by the Eleventh Circuit.

83.

The Copyright Act provides that "a plaintiff must file suit within three years after the claim accrued." 17 U.S.C. § 507(b). Under the discovery rule applied by the Eleventh Circuit, a claim accrues when the plaintiff discovers, or with due diligence should have discovered, the infringing act. *Warner Chappell Music, Inc. v. Nealy*, 601 U.S. 366 (2024). *Nealy* did not decide whether the discovery rule governs accrual, but it held that, assuming a timely claim under that rule, the Copyright Act does not impose a separate three-year damages bar.

84.

The Eleventh Circuit applies the discovery rule where the gravamen of the copyright infringement claim is ownership. *See Webster v. Dean Guitars*, 955 F.3d 1270, 1276 (11th Cir. 2020). Because the central issue in this case is whether

Schlaifer retained copyright ownership following the 1988 Settlement, the gravamen of this case is ownership, and the discovery rule applies.

85.

Schlaifer could not have known with reasonable certainty that he was the sole owner of the copyright in the Cabbage Patch Kids Large Doll until the U.S. Copyright Office issued its Registration Decision on July 3, 2023. The June 1, 2023 exchange with Copyright Office examiner R. Barker documents that Schlaifer and the Copyright Office were still working through the authorship question — Coleco's role, Judy Albert's role, the licensee/sublicensee chain. The Office adjudicated the matter on July 3, 2023. That is the moment any diligent owner could have actually known what he owned, and it is documented on the seal of the Register. *See* Correspondence with Copyright Office, attached hereto as **Exhibit "D"**.

86.

The discovery-rule theory rewards exactly this scenario: a diligent owner who pressed the federal record-keeper for an answer, received it, and acted promptly once he knew.

87.

Moreover, the Supreme Court in *Nealy* held that a copyright owner possessing a timely claim under 17 U.S.C. § 507(b) is entitled to damages for infringement "no matter when the infringement occurred." *Nealy*, 601 U.S. at 372. Accordingly, if

Plaintiff's claim is timely under the discovery rule, Plaintiff is entitled to damages for the entire period of infringement, without a three-year lookback limitation.

**COUNT I**

(Defendants' infringement of VA 2-353-205 — Cabbage Patch Kids Large Doll)

88.

Plaintiff repeats and re-alleges the assertions contained in the paragraphs above.

89.

Schlaifer owns all rights, title, and interest in and to U.S. Copyright Registration No. VA 2-353-205 ("Cabbage Patch Kids Large Doll" or the "Large Doll Copyright").

90.

Defendants, without permission, license, authorization or consent from Plaintiff, have copied, sold, distributed, advertised and commercially exploited Schlaifer's Cabbage Patch Kids Large Doll design, which is protected by VA 2-353-205.

91.

With knowledge of Schlaifer's copyrighted work, including the Cabbage Patch Kids Large Doll, Defendants have each rendered substantial assistance to each other's acts of infringement as described above and are each thus jointly and severally liable for the infringement of VA 2-353-205.

92.

Defendants have thereby knowingly infringed VA 2-353-205.

93.

Defendants' infringing acts were committed with knowledge or in reckless disregard of Plaintiff's rights in VA 2-353-205 under the Copyright Act.

94.

The aforementioned acts by Defendants have damaged and, if not enjoined, will continue to damage Plaintiff and cause irreparable harm for which Plaintiff has no adequate remedy at law. Plaintiff is thus entitled to preliminary and permanent injunctive relief pursuant to 17 U.S.C. § 502 prohibiting Defendants from infringing Plaintiff's copyrights, including but not limited to an injunction prohibiting Defendants from (a) imitating, copying, or making any unauthorized use of the Cabbage Patch Kids Large Doll design in any manner, and from publishing, distributing, selling, marketing, or otherwise disposing of any copies of the Large Doll design; (b) manufacturing, producing, distributing, circulating, selling, offering for sale, advertising, promoting, or displaying any copy or colorable imitation of Plaintiff's registered copyright; and (c) using any simulation, reproduction, counterfeit, copy, or colorable imitation of Plaintiff's copyright in connection with the promotion, advertisement, display, sale, offering for sale, manufacture, production, distribution, or circulation of any product or service.

95.

Defendants' intentional and unlawful copying of the Cabbage Patch Kids Large Doll design has allowed them to receive profits and gains to which they are not entitled.

96.

Upon information and belief, Defendants have made substantial profits and gains from the CPK franchise that they are not entitled to retain.

97.

Plaintiff is entitled to recover from Defendants all damages Plaintiff has and may later sustain due to Defendants' improper copying of VA 2-353-205, and Defendants' profits from their improper conduct, or statutory fees at Plaintiff's election, in an amount to be proven at trial, pursuant to 17 U.S.C. § 504.

98.

The actions of Defendants have been willful and deliberate and justify an award of attorneys' fees and costs to Plaintiff pursuant to 17 U.S.C. § 505.

**WHEREFORE**, Plaintiff Roger L. Schlaifer respectfully requests that the Court:

1. Enter judgment that Defendants have infringed upon Plaintiff's copyrighted work;
2. Direct Defendants to pay Plaintiff such damages as the jury determines Plaintiff has sustained in consequence of Defendants' infringing

Plaintiff's copyright, and to account for all gains, profits, and advantages derived by Defendants by their infringements of Plaintiff's copyright under 17 U.S.C. § 504(b), or at Plaintiff's election, statutory damages under 17 U.S.C. § 504(c);

3. Preliminarily and permanently enjoin Defendants, their officers, directors, agents, partners, employees and related companies, and all persons acting for, with, by, through, or under them, from copying, reproducing, distributing, advertising, promoting, offering for sale, selling, or licensing any works substantially similar to Schlaifer's copyrighted work, including the operation of Babyland General Hospital using Schlaifer's copyrighted materials and the licensing of the CPK property to third parties;

4. Order Defendants to deliver up to be impounded during the pendency of this lawsuit under 17 U.S.C. § 503 all copies of Schlaifer's copyrighted work in Defendants' possession or under Defendants' control and to deliver up for destruction all infringing copies and all devices used for making such infringing copies;

5. Direct Defendants to pay Plaintiff the costs of this lawsuit and reasonable attorney's fees allowable by the Court under 17 U.S.C. § 505;

6. Award Plaintiff such other and further relief as the Court may consider appropriate; and

7. Plaintiff requests a jury trial as to all matters other than the equitable remedies sought herein.

Respectfully submitted this 3rd day of July, 2026.

**BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC**

*/s/ L. Clint Crosby*
L. Clint Crosby
Georgia Bar No. 197877
Tyler P. Bishop
Georgia Bar No 566705
3414 Peachtree Road, NE, Suite 1500
Atlanta, GA 30326
Telephone: 404-577-6000
ccrosby@bakerdonelson.com
tbishop@bakerdonelson.com

– and –

Benjamin W. Janke
Louisiana Bar No. 31796
*Pro Hac Vice* forthcoming
Ashley E. White
Louisiana Bar No. 41980
*Pro Hac Vice* forthcoming
201 St. Charles Avenue, Suite 3600
New Orleans, Louisiana 70170
Telephone: 504-566-5200
bjanke@bakerdonelson.com
awhite@bakerdonelson.com

**COUNSEL FOR PLAINTIFF, ROGER L. SCHLAIFER**